## Commonwealth v. Bender

*J. Michael Eakin, district attorney,* for the Commonwealth.

*William J. Fulton,* for defendant.

BAYLEY, *J.,* September 7, 1994—The Dog Law, 3 P.S. §459-101 et seq. defines a "dangerous dog" at section 501-A as, "A dog determined to be a dangerous dog under section 502-A." Section 502-A, titled "Registration," provides:

"(a) *Determination.*—Any person who has been attacked by a dog, or anyone on behalf of such person, a person whose domestic animal has been killed or injured without provocation, the state dog warden or the local police officer may make a complaint before a district justice, charging the owner or keeper of such a dog with harboring a dangerous dog. *The determination of a dog as a dangerous dog shall be made by the district justice upon evidence of a dog's history or propensity to attack without provocation based upon an incident in which the dog has done one or more of the following:*

"(1) Inflicted severe injury on a human being without provocation on public or private property.

"(2) *Killed or inflicted severe injury on a domestic animal without provocation while off the owner's property.*

"(3) Attacked a human being without provocation.

"(4) Been used in the commission of a crime. (emphasis added)

"(b) *Report of determination.*—The district justice shall make a report of a determination under subsection (a) to the Bureau of Dog Law Enforcement.

"(c) *Certificate required.*—It is unlawful for an owner to have a dangerous dog without a certificate of registration issued under this article...."

If a dog is determined to be a dangerous dog, section 503-A of the Act sets forth requirements that must be met by the owner for a physical enclosure and financial security; section 504-A requires that the dog be muzzled and restrained when outside an enclosure; and section 505-A provides that the dog may be immediately confiscated by a state dog warden or police officer if these requirements are not complied with or the dog is not registered under the Act.

Upon information received, an officer of the Department of Agriculture filed citation no. F62198 against Charles J. Bender Jr. seeking a "determination" under section 502-A of the Dog Law. A district justice made a determination that Bender's rottweiler is a dangerous dog. Bender appealed from that summary disposition and a hearing de novo was held on August 23, 1994. The evidence was as follows.

Renee Manning lives in the Borough of New Cumberland. She owned a domesticated calico cat for 14 years. It was not unusual for the cat to get out of her house and roam in the neighborhood. On October 13, 1993, while some workmen were installing carpeting

in her home, the cat got out. Charles Bender and his wife Michelle live across the street from Renee Manning. They moved there in the summer of 1993. They brought with them a white husky and a black rottweiler. The husky had a history of attacking cats. The rottweiler had never attacked any cats, nor had it ever attacked a person. The rottweiler was often around children and has been around cats. The Benders kept their dogs inside their house or within an area in the back which is surrounded by a six-foot wooden stockade fence. On October 13 both dogs got out of the enclosure. Mr. Bender later discovered that the dogs had pushed out some slats in the fence.

At about 10 a.m. on October 13, Renee Manning looked through a window in her house and saw a white dog go by. She went to the door and saw the Bender's white husky and black rottweiler on her lawn. The husky had her cat's head in its mouth, and the rottweiler had the back of the cat in its mouth. The dogs were pulling at the cat. Manning ran outside and the rottweiler let go of the cat. The rottweiler growled, and Manning went across the street to get the Benders. The rottweiler then grabbed the cat again. A neighbor, Ed Miller, saw what was happening and approached the dogs with a broom. The rottweiler let go of the cat and came toward Miller. Miller backed away and went into his house and called 911. When he came out again he saw that both dogs had a hold of the cat. The cat was quivering and near death. Charles Bender came to his door when Manning knocked. Manning testified that Bender immediately went outside with a leash which he had to wrap around the rottweiler's head and choke it to get it into the house. Bender testified that he called

the rottweiler and it came over. He got a strap on it and put it into the house. He then went after the husky that still had the cat in its mouth. The cat died.

The Benders have given the husky to a shelter in York. Since they had no prior problems, nor have there been any subsequent problems with the rottweiler, and since they attributed the attack on the calico cat to the husky, the Benders have kept the rottweiler. The Commonwealth maintains that this single incident involving the attack on the Manning cat warrants a determination under section 501-A of the Dog Law that the rottweiler is a "dangerous dog." The Statutory Construction Act of 1972 at 1 Pa.C.S. §1921(a) provides, "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the general assembly. Every statute shall be construed, if possible to give effect to all its provisions." Section 502-A provides, "the determination of a dog as a dangerous dog shall be made ... upon evidence of a dog's *history or propensity* to attack without provocation based upon an incident in which the dog ... killed or inflicted severe injury on a domesticated animal without provocation while off the owner's property." (emphasis added) It is the dog's history and any propensity to attack without provocation based on the incident of October 13, 1993, which we must consider in making a determination of whether it is a dangerous dog. A single incident is not necessarily determinative on the issue of whether a dog is a dangerous dog, otherwise the legislature would have so provided.

Prior to October 13, 1993, the rottweiler had no history of aggressiveness toward cats. It had been around cats without incident. It was the husky that had the history of attacking cats. When the husky and rottweiler got out of their enclosure together, the husky, consistent

with its history, attacked the cat. It is not surprising that under that circumstance the rottweiler participated in the attack. On these facts, and without minimizing the seriousness of the killing of the Manning cat, we find that the rottweiler is not a dangerous dog because the evidence does not support a conclusion that it has the *propensity* to attack a cat itself without provocation. Accordingly, the following order is entered:

## ORDER

And now, September 7, 1994, we find that the rottweiler owned by Charles J. Bender Jr., is not a dangerous dog under section 502-A of the Dog Law.